## NOMA ELECTRIC CORPORATION v. M. GOLDMAN & CO., Inc.

### No. 2112.

District Court, D. Connecticut.

July 13, 1932.

Morris Kirschstein, of New York City, and Benjamin Slade, of New Haven, Conn., for plaintiff.

Henry E. Rockwell and Edmond M. Bartholow, both of New Haven, Conn., for defendant.

THOMAS, District Judge.

This is the usual bill in equity charging the defendant with infringement of letters patent No. 1,512,888 issued to Lester Haft on October 21, 1924, on an application filed March 11, 1921. By mesne assignment title to the patent vests in the plaintiff.

There are three claims in the patent. The first and second are relied upon, and they read:

"1. A unitary Christmas tree lighting set comprising an attachment plug adapted to be inserted in a standard lamp socket, a plurality of miniature lamps connected together in series, lead wires connecting said lamps with the circuit terminals of the attachment plug, a complementary attachment member adapted to receive the similar attachment plug of a second lighting set, and lead wires connecting the terminals of said complementary attachment member in multiple with the lead wires of the lamps.

"2. A unitary electric decorative lighting set comprising a quick detachable member of a standard electric circuit connecting couple, a plurality of miniature lamps connected together in series, lead wires connecting said lamps with the terminals of the coupling member, and a coupling member complementary to and having its terminals connected in multiple with the terminals of said first mentioned coupling member."

The invention described and claimed in the patent in suit relates to an electric illuminating set of the type known to the trade as a Christmas tree or decorative lighting set. It appears that prior to the invention described in the patent in suit Christmas tree lighting sets consisted of either a single set of 8 miniature lamps connected together in series about a foot apart, and with lead wires of convenient length connected to the terminals of an ordinary screw attachment plug for connection to the usual lamp socket in a lighting circuit—or of 16, 24, or 32 such lamps connected together with eight in a series, and with the lead wires of each series tapped into a junction box, the leads of which were, in turn, connected to an attachment plug. The usual 110 to 120 volt potential on the lighting circuit is thus divided by 8, and so each miniature lamp in the outfit receives approximately 15 volts.

Prior to the invention described in the patent in suit, it was necessary, in order to suitably illuminate large objects or trees, to purchase a number of small outfits or one or more of the larger outfits, and to find a separate lamp socket or other source of current to which to attach each separate outfit employed. The Christmas tree lighting industry was standardized with reference to the 8 light and the larger 16, 24, and 32 light junction box sets, and manufacturers accordingly had to make, and dealers had to purchase and stock, all four types as each might think it necessary to meet the requirements of his own trade.

The evidence as well as common experience shows that it was very difficult for jobbers and dealers to properly stock the lighting outfits, as it was difficult to gauge the public demand in advance, so that a jobber or dealer might overstock or understock the 8, 16, 24, and 32 light outfits with consequent

embarrassment and loss of business incident to being unable to satisfactorily meet the demand for the various outfits.

The inventor set out to produce a lighting set which would obviate these difficulties, as will appear from line 45 page 1 of the specification, where we read: "The object of the present invention is to obviate the above, and other, defects in the prevailing standard practice, by providing an improved or unitary outfit, of simple construction and of low cost, which can either be used alone or can be readily connected one to another in an indefinite series, without the use of tools and with no more skill than that possessed by the average adult or child, and which thus serves as a unit for a flexible system capable of expansion and contraction as required."

For this purpose the inventor made a lighting set with a single series of eight lamps, and incorporated therein an ordinary threaded socket or other standard electric coupling member of standard lamp size adapted to receive the attachment plug of a second set, which coupling member is connected in multiple with the lead wires of the set, so that a second and each additional set connected thereto receives across its terminals the full voltage of the lighting circuit to which the outfit is attached.

The defenses are: (A) Invalidity of the claims in suit because of anticipation and lack of invention in view of prior practices; (B) invalidity of the claims in suit because of anticipation and lack of invention in view of prior patents and publications; and (C) lack of literal infringement, particularly of claim 1.

### A. Prior Practices.

██ Defendant has offered evidence to show use of the invention claimed in the patent in suit as far back as 1896; another use in 1899; and still another around 1911. The deposition of the witness Kliegel is based entirely upon recollection uncorroborated by any contemporaneous documents. Mr. Justice Brown, speaking for the Supreme Court of the United States in the Barbed Wire Patent, 143 U. S. 275, at page 284, 12 S. Ct. 443, 447, 36 L. Ed. 154, speaking of unpatented devices claimed to be complete anticipations, laid down the rule as follows: "Courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt."

It is therefore obvious that Kliegel's testimony is insufficient to meet the decisions defining what is necessary to establish prior use. See, also, Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153; Eibel Co. v. Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523; Earles v. A. W. Drake Manufacturing Co. (C. C. A.) 300 F. 265, 267; Pyrene Manufacturing Co. v. Boyce (C. C. A.) 292 F. 480. The witness Kliegel testified that at the times specified above garlands were used in certain theaters in New York City and elsewhere, each consisting of a number of lights in series connected to a terminal plug, but his testimony is not clear as to whether each of the garlands had a coupling member complementary to and having its terminal connected in multiple with the attachment plug of the garland so that, even if the use of these garlands were established by competent and sufficient proof, they would not anticipate the invention of the patent in suit.

### B. The Prior Art.

██ The prior art patents and publications relied upon by the defendant all disclose electrical fittings for multiple circuits, some of which could be used to produce the combination defined by the claims in suit. However, the patent in suit does not claim an electrical fitting. It is entitled a "lighting set," and throughout the specification the inventor speaks of the "outfit," meaning of course, the lighting set. The invention described and claimed therein is directed to a specific art and to a specific improvement in said art. The claims define a specific article of manufacture—a unitary "Christmas Tree" or "electric decorative" lighting set comprising a quick detachable member or attachment plug in series with a plurality of miniature lamps and generally in multiple circuit with a usual socket member adapted to receive the plug of a similar set. This combination is not disclosed by the prior art or prior publications taken either singly or combined. Old sets of 8, 16, 24, and 32 lamps have been on the market many years prior to the patentee's invention and, while series and multiple arrangements of lamps in lighting circuits have been old and known during all that time, and fittings for constructing multiple light circuits were readily accessible, the dominating conception of the patent in suit remained hidden from the public until the patentee's invention, and no one prior thereto, as far as the record shows, ever thought of providing a single unitary Christmas tree lighting outfit of standard construction

whereby decorative illumination of extremely flexible character can be obtained by adding at will one standard unit to another so that 16, 24, 32, etc., lights may be added or built up in the tree with the use of one single outlet to which the connecting plug of the first standard unit is connected. Here—as so often happens, particularly in simple inventions, after the inventor has accomplished a result which enjoys a conspicuous commercial success and his device has almost supplanted the old Christmas tree lighting sets, it lies not in the mouth of the infringer to base his defense on the ex post facto wisdom of a bystander. It is no argument against invention that what the patentee did was indeed very simple and the obvious thing to do. Nor does it militate against invention that all the elements were old, when, as in the case at bar, the combination is new. Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Steiner & Voegtly Hardware Co. v. Tabor Sash Co. (C. C.) 178 F. 831, 839. Nor does it detract from the merits of the invention that it is not of a very high order. Invention is not always the offspring of genius—more frequently it is the product of study to ascertain the defect and then the discovery of what will cure the defect. In the case at bar it was apparent that the old sets were unsatisfactory, and Haft, sensing that fact, set out to and did cure it. Radiator Specialty Co. v. Buhot (C. C. A.) 39 F.(2d) 373, 376.

### C. Infringement.

On the question of infringement, the defendant's structure, Plaintiff's Exhibit AA, comes clearly within the terms of claim 2 of the patent in suit. This has not been seriously questioned by the defendant. As to claim 1 some question is raised by defendant because it uses a coupling member of the type illustrated in Plaintiff's Exhibit FF. This device is the equivalent of the coupling member disclosed in the patent in suit, as it performs substantially the same function in substantially the same way to obtain the same result. Consequently defendant's structure—Plaintiff's Exhibit AA, comes within the terms of claim 1 of the patent in suit.

For the reasons given, I therefore conclude and hold that claims 1 and 2 of the patent in suit are valid and infringed. Plaintiff may have a decree with the usual provisions, together with costs to abide the event.