## CLINE v. HORTON.

(District Court, E. D. New York. June 17, 1921.)

1. Patents ⚙⟾90 (7)—Acceptance of suggestions from others does not defeat right to patent.

Acceptance of suggestions made by workmen or associates of the inventor during experimentation do not deprive the inventor of the right to claim sole invention, if the improvements are not of themselves patentable.

2. Patents ⚙⟾328—Design 49,204, for an insulator, held valid.

The Cline design patent, No. 49,204, for a design for an insulator, *held* valid.

3. Patents ⚙⟾209 (1)—License may be granted by parol.

Where defendant manufactured and marketed an article patented by complainant, with complainant's acquiescence, though the oral agreement between them was never made definite as to terms, defendant cannot be charged as an infringer, but is accountable for an equal share of the net profits, as a partner.

In Equity. Suit by Jerome G. Cline against John T. Horton. Decree for complainant.

Paul L. Kiernan, of New York City (Maurice J. Moore, of New York City, of counsel), for plaintiff.

Conrad A. Dieterich, of New York City, for defendant.

CHATFIELD, District Judge. The plaintiff is the patentee of design patent No. 49,204, granted June 20, 1916. The object depicted in the design is an insulator body intended for use in supporting an electric conductor dependent from overhead beams or similar surfaces. It consists of a rectangular block terminating in a square plate, from the lower surface of which depends a solid flange or petticoat around its outer edge, and with a thin round boss or washer on the top of the flat plate, by which the bearing surface is diminished, in order to prevent cracking when the insulator is drawn up close and tight to the supporting surface. The conductor is carried through an opening in the lower part of the rectangular body. The different parts, viz. the rectangular body, the plate, and the boss, are all integral and constructed of insulating material. A threaded attaching bolt is imbedded in the insulator.

It appears from the testimony that the plaintiff, who was a salesman dealing with the defendant, interested the defendant in the manufacture of these insulators. At that time the plaintiff showed a drawing to the defendant, representing only the rectangular block, the aperture for carrying the conductor, and the threaded bolt inserted in the upper side. Some discussion arose before the defendant undertook to manufacture the article, and the obvious and well-known feature of a petticoat (but in a somewhat unusual shape) was added as soon as the question of using the insulating body out of doors was considered. The novel form of the petticoat consists in its having square corners, corresponding to the rectangular shape of the block; but it is admitted by all the parties that the use of a petticoat on an insulator was well known in the art.

It appears from the testimony that the suggestion of the petticoat came from the defendant, Horton, while the precise form of the petti-

coat, as set forth in the design, was worked out by a draftsman and was evidently agreed to by the plaintiff. In the same way, upon the trial it was apparent that the flat plate carrying the petticoat was fragile when the block was closely drawn up to the supporting surface. An iron washer was used by the defendant in experimentation, and the plaintiff then embodied the use of such a washer in his design, but constructed it of the material of which the block was made, and showed it as an actual part of the block.

Before the patent was obtained, the plaintiff and the defendant discussed various arrangements for putting the device upon the market. The defendant insisted upon an assignment of a part interest in the patent. The plaintiff demanded some interest in the other business of the defendant. No written agreement was entered into, but the defendant by oral agreement was in the meantime given the right to manufacture and dispose of the articles, which were stamped "Patent Applied For."

The parties never reached an agreement as to the terms under which the business should be conducted. The defendant has been putting the device upon the market, and the plaintiff, after obtaining the design patent, has demanded an accounting, and now charges infringement against the defendant.

The defendant alleges that the patent is invalid, inasmuch as the plaintiff filed a verified application as sole inventor, and also denies the right of the plaintiff to charge the defendant with infringement, claiming an oral assignment of one-half interest in the patent, as well as a share in the invention as joint inventor.

It is evident that the plaintiff cannot charge infringement against the defendant, if it be established that plaintiff has assigned to the defendant a one-half interest in his patent. Nor can the defendant allege invalidity, if he has any valid assignment of interest in, or license under, the patent. The assignment would give the defendant the right to manufacture, and methods of accounting or division of profits would depend upon the details of the arrangement. But this would not be a suit under the patent law.

The present action is not maintainable on any grounds of United States jurisdiction, even if maintainable in equity for an accounting, unless the plaintiff can make out his charge of patent infringement, as the parties are both residents of this state and citizens of the United States.

The defendant has not, however, attacked the jurisdiction of the court, nor presented any evidence to oust the court from hearing the action. On the contrary, the defendant has gone into the merits and submitted much of the testimony necessary on the accounting. Unless, therefore, the case is evidently one where lack of jurisdiction over the cause of action is apparent (Danks v. Gordon [C. C. A., Second Circuit, March 2, 1921] 272 Fed. 821), we must proceed to consider the issues.

[1] The first defense, that the plaintiff is not the lawful owner of a valid patent, presents a situation which frequently arises. Suggestions as to improvements during experimentation may be made by workmen or associates of the inventor, but do not thereby deprive the inventor of the sole right to claim invention, if they are not of them-

selves patentable, or if they have to do with mere details in the work which were pointed out to the inventor and accepted and worked out by him, so that his own independent effort is actually responsible for the complete device. It is frequently difficult in a simple structure to determine whether there was participation by other people in what is claimed as invention, or whether the inventor has received ideas from his workmen and associates, under such circumstances that his own mind has been working with these associates, and has arrived at the result without independent invention on their part. Frequently this question must be determined by the acts of the parties. A share of credit for an invention does not mean that there has been joint invention in the legal sense, nor is an inventor to be deprived of his property in the invention because subsequently those who have voluntarily assisted him decide that they should have demanded recognition as co-inventors in applying for a patent.

As has been said, the addition of the petticoat, or the employment of a particular style of petticoat, would not of itself be invention in a device patent. The prior art shows many forms of device for this precise purpose. None of the parties hereto seemed to consider the device itself patentable, and as a design the elements are old.

[2] But, taken as a whole, the design in question, including the petticoat and the idea of an integral washer, was evidently patentable. Undoubtedly the defendant, Horton, had some share in working out this design. What is just as apparent is that he was content to divide the profits accruing from the device, and to leave to the plaintiff the rights of claiming invention or taking out a patent. He has never sought to protect himself by seeking a patent, nor brought an action for a specific performance of the alleged agreement. Under such circumstances, it is impossible to hold that the plaintiff made a false oath, or should be deprived of his patent by the subsequent idea of the defendant that his share in the invention should be recognized to the extent of depriving the plaintiff of the patent.

[3] But patent rights or a license may be transferred orally, and parties may enter into an agreement by which they may act as partners without the making of a written contract. This seems to be the situation in the present case. The plaintiff and the defendant never reached an agreement as to how they would become general partners, but they did act in perfect accord in so far as the defendant began to put upon the market the plaintiff's device. He thereby inferentially and legally bound himself to account to the plaintiff therefor. Pending negotiations, and in the absence of any objection under the statute of frauds, his temporary agreement was valid.

Since that time the defendant has been manufacturing the patented device under this oral license, until it was in fact terminated by the plaintiff, prior to the bringing of the action. The defendant then became an infringer, but by a sort of mutual stipulation, recognized by both the plaintiff and defendant as beneficial, although not satisfactory, and not in accord with their personal feelings, the defendant, subject to an accounting or settlement of the dispute, has continued putting on

the market the patented device, as if under an extension of this license or oral agreement, even though it had been actually terminated.

The plaintiff is estopped from claiming damages, but has rights under his patent and a share of net profits, which must be divided equally. Therefore an accounting will be ordered, but the decree may provide for a continuation of the license, on the basis of one-half net profits, unless the plaintiff insists upon possible further litigation in another jurisdiction as to the alleged violation of his agreement to convey the right to manufacture under the patent.