22 C. C. P. A. (Patents)

### In re HOPKINS.

#### Patent Appeal No. 3480.

Court of Customs and Patent Appeals.
May 27, 1935.

Edgar W. Adams and Guy M. Campbell, both of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner rejecting all the claims of an application for patent entitled, "Sound Translating System."

There are five claims, numbered respectively, 1, 2, 3, 5, and 6. All were rejected for lack of patentability in view of the prior art, the references relied upon being:

Kellum, 1,137,060, April 27, 1915.

Hanna, 1,687,665, Oct. 16, 1928.

Claims 1 and 6 are quoted as illustrative of the subject-matter:

"1. A system for translating the human voice into variations in an electrical circuit, comprising a sound pick-up device, a transmission line and a receiving device, the sound pick-up being supported on the body of the speaker whereby vibrations of certain frequencies are delivered to it at greater relative amplitude with respect to other frequencies than they would be received by a similar device mounted independently of the speaker's body and the pick-up being constructed to have a lesser response to said frequencies than to the other frequencies whereby the normal amplitude relation of the electrical variations is maintained in the transmission line."

"6. The method of translating the human voice into electrical variations which comprises receiving the high frequency components largely by means of the acoustic waves set up by the voice, receiving the low frequency components largely by direct vibrations of the human body and translating said high and low frequency components at different efficiencies to obtain electrical variations corresponding to the frequency amplitude relation of the normal transmission of the voice through the air."

The end sought by appellant, as we understand the necessarily technical phraseology of his specification, is that of providing a system whereby one speaking to an audience with the aid of a microphone and amplifying means may be able to move from point to point while speaking and still have the sound of his voice go forth

as clearly and with the same uniformity of tone as though he stood at a relatively single point near a stationary microphone. This, at least, is one purpose, and the terse description of appellant's disclosure given by the Examiner we think sufficiently depicts appellant's combination and the limitations embraced, respectively, in the several claims.

The Examiner says: "This application discloses a public address system composed of a microphone, transmission line and receivers. The alleged invention in this application consists in providing a microphone for a speaker which may be inserted in the upper coat pocket of the speaker. It is further provided that the low frequency components of speech which are radiated in part by the chest portions of the speaker's body may be damped or attenuated so that the resulting speech delivered to the auditors will contain the various frequency components in undistorted relationship to each other. In order to accomplish this result applicant proposes to construct a pick-up or microphone which will have a drooping characteristic at low frequencies, 'the transmission loss at each frequency being just sufficient to compensate for the over-emphasis on that frequency caused by the chest tone effect.' Another expedient offered by applicant is that of using a transformer in the transmission line, the transformer being relatively inefficient at low frequencies so that chest tone distortion will be eliminated."

The patent to Kellum is entitled, "Sound Transmission and Recording." It discloses a microphone, or sound pick-up device, which may be carried upon the body of a person, together with a transmission line and receiver.

The patent to Hanna, which is entitled "Microphone Circuit," discloses a form of transmitter circuit whereby there is control of the response of a microphone in such manner that the speech energy delivered to the receiver is rendered uniform over the ordinary range of speech frequency.

It is obvious that the purpose which Kellum had in view was in part, at least, the same as that of appellant, and that there are elements in both devices which are similar in structure and function. This appellant concedes, but it is asserted that Kellum does not "suggest or accomplish * * * the elimination of the chest tone effects upon the pick-up device in order to provide that the currents produced by the pick-up device correspond substantially to the sound waves transmitted to the auditors through the air."

That Kellum lacks this feature is not questioned, but the tribunals of the Patent Office were of the opinion that the transmitter circuit disclosed by Hanna was so designed that it solved the problem, and they held, in effect, that it would be obvious to one skilled in the art to substitute this feature of Hanna for the transmitter of Kellum.

In other words, the tribunals of the Patent Office combined the references, and, upon the theory that appellant does not disclose means for tone control, or transmission, which are new or inventively distinctive over the features of such references, and that nothing more than mechanical skill was involved in combining such features, denied the patentability of appellant's combination.

As so often happens in cases where combination claims are rejected upon a combining of features taken from different patents, or other prior art sources, the appellant here challenges the correctness of the decision.

It is insisted, in substance, that neither of the references singly or in combination suggests the elimination of chest tones from a receiver carried on the body of a person, or any method therefor; that it is not obvious from the teachings of the references that they could be combined to produce appellant's invention; that even if they could be combined "without modification of the clear intent of the patentees," the combination would not produce the results of appellant's invention, and that invention is not negatived by the mere fact that the structure may appear obvious after it is disclosed.

These several arguments have received our careful study in the light of appellant's disclosure and his reasons for appeal. The authorities relied upon have been examined and considered.

No authority need be cited in support of the rule that it does not constitute invention to combine elements, whether new or old, unless some new and unobvious result is obtained.

What result would be expected from a combination of the references here cited,

other than the result which appellant claims to have obtained?

It is true, of course, that neither patentee makes any specific reference to "chest tones," or "body vibrations," but it seems to us that Hanna's teachings are certainly sufficiently broad to include "chest tones" along with all other tones, however they may be formed or conducted.

His teaching with respect to the state of the microphone art, at the time he filed his application, was that "Most microphones respond in a resonant manner to a particular frequency, delivering at that frequency a greater electromotive force than at other frequencies," and he discloses a device so constructed as that, according to his specification, "The difference of potential impressed upon the operating circuit, is, * * * a constant regardless of the changes in frequency in the sound energy, varying only with the amplitude of sound."

We are unable to discern any difference in the result claimed by Hanna and that expressed in appellant's claim 1, supra, wherein, after referring to "vibrations of certain frequencies," it is recited, "the pick-up being constructed to have a lesser response to said frequencies than to the other frequencies whereby the normal amplitude relation of the electrical variations is maintained in the transmission line." The experts of the Patent Office construe the meaning of these teachings to be the same, and appellant has not convinced us of the error of such construction.

That some structural or physical modifications of the devices of the references would be required to impose Hanna's device upon, or introduce it into, the device of Kellum is not doubted, but what these modifications would have to be, appellant does not attempt to inform us.

The brief argues: "That even if the disclosures of the references could be combined without modification of the *clear intent* of the patentees, the combination would not produce the results of applicant's invention." (Italics ours.)

The exact meaning of this argument is not clear to us, but it seems sufficient to say that we do not understand wherein "modification of intent" may have any proper bearing upon the issue before us. In this proceeding we have only to consider method and structure. If there be

invention, it must be in one or both of these, and unless the modifications of these, required to obtain appellant's result, amount to invention, patentability must be denied.

Claims 3 and 5 call for the use of a transformer in the transmission line between the microphone and the receiver, instead of the transmitter circuit arrangement. No particular emphasis was placed upon this alternative, however, and there is no serious challenge of the holdings of the tribunals upon this point to the effect that transformers are well known and that the utilization of one in appellant's device would amount to nothing more than the exercise of mechanical skill.

We are not convinced that there was error in the decision of the Board of Appeals, and the same is affirmed.

Affirmed.