673

## AMY, ACEVES & KING, Inc., v. TOBE DEUTSCHMANN CORPORATION.

### No. 3963.

District Court, D. Massachusetts.

June 23, 1937.

David Rines, of Boston, Mass., and Norton & Simmons (by M. Theodore Simmons), of New York City, for plaintiff.

Ezekiel Wolf, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This bill in equity involves infringement of two patents, No. 1,938,092 and No. 1,920,162. The former patent was granted December 5, 1933, to Ernest V. Amy and Julius G. Aceves, on an application filed September 24, 1932. This application was a division of an original application filed December 4, 1929. The latter (No. 1,920,-162) was granted July 25, 1933, to Ernest V. Amy and Frank King, upon an application filed August 10, 1932. Both patents have been assigned to the plaintiff corporation. Claims 1–4, 8–11, 14, and 15 of No. 1,920,162 and all claims except claim 5 of No. 1,938,092 are in suit. A disclaimer has been filed as to certain portions of claims 2, 4, and 6 of the latter patent. The defenses are invalidity and noninfringement.

Throughout this opinion, statements of fact may be taken as findings of fact, and statements of law as conclusions of law, as required by the equity rules.

Patent No. 1,938,092 describes a "radio receiving system" designed to reduce noise interference to radio receivers resulting from the operation of other electrical apparatus in the immediate vicinity of the radio receiver. The following claims, which are representative, adequately describe the system:

"1. A radio receiving system for protecting a receiver from local interference comprising, in combination, an antenna for collecting signal energy to be supplied to a receiver, a lead-in, a radio receiver operatively associated with said lead-in, a shielding case surrounding said lead-in over a substantial portion of its length, and means interposed between said antenna and said lead-in for matching the impedances thereof.

"9. In a radio receiving system for protecting a receiver from local interference, in combination, an antenna for collecting signal energy to be supplied to a receiver, a lead-in, said lead-in being enclosed within a grounded conducting container, a radio receiver operatively connected with said lead-in, and a transformer interposed between said antenna and said lead-in, said transformer comprising primary and secondary windings, the leakage reactance of said windings being chosen to compensate for the capacity reaction of the antenna over a band of frequencies."

This patent is addressed to the problem of minimizing interference to broadcast receiving equipment caused by "man made static" or electrical disturbances produced by electrical apparatus, such as dial telephones, door bells, and all devices using electric motors of whatever size. Such disturbances are local in character and may be picked up only in the immediate vicinity of the offending apparatus or its associated wiring. The patentee seeks to overcome these interferences by providing an antenna suspended above the house, connected to the receiver by a shielded lead-in, the shield being grounded, so that it is incapable of being affected by local disturbances. Previous attempts to use a shielded lead-in failed because, although the use of shielding prevented pickup in the shielded portion, the desired signals were also severely attenuated. Patentee's system avoids this difficulty by the use of an impedance matching transformer inserted between the end of the antenna proper and the shielded lead-in. According to testimony given at the trial, "impedance matching" means the transformation of energy in one electrical circuit into current and voltage forms fitted to another and different circuit. Because of the large capacity between the shield and wire within, such a transmission line will transmit high frequency alternating currents most efficiently if the voltage is lowered considerably and the current raised relative to the ratio between the two which exists at the end of a receiving antenna. By the use of such an impedance matching transformer, shown in the specifications as an auto-transformer with one end connected to the antenna, the other to the grounded shield, and the inside wire tapped off at a point somewhere in between, it was shown to be possible to enjoy the advantages of a shielded lead-in without serious loss to the desired signals.

Plaintiff's patent No. 1,920,162 describes a "radio aerial attachment" designed to permit the application of the principles disclosed in the broader patent to the installation of the average listener. An impedance matching transformer is shown inside a bell-shaped metal case of waterproof construction, with convenient means provided for hanging the device from the horizontal portion of the antenna, and for making the proper connections. Claim 4 is sufficiently illustrative:

"4. A device for connecting a shielded downlead to a radio receiving aerial, comprising a casing formed by a metal shell open at the bottom and a bottom closure of insulating material, a connecting member extending from the top of the casing and formed for attachment to and for making electrical connection with the aerial, connecting members extending from the bottom closure for connection to the downlead conductor and the downlead shield respectively, and an impedance matching transformer within the casing connected between the aerial connecting member and the downlead connecting members."

The device is also described as desirably having a safety gap between aerial and shield across the entire coil, thus serving as a lightning arrestor.

The plaintiff began to market a kit containing the above-described device, together with some suitable shielded cable and lead-in coupling device, consisting of another transformer, for the purpose of coupling the low impedance line to receivers designed to work directly from high impedance antennas. The plaintiff also licensed four other manufacturers to make similar kits.

The defendant manufactured and sold a kit identical with the plaintiff's kit except that the metal shell was of a slightly different shape, and slightly different means were used to connect the shielded lead-in to the transformer mechanically. The electrical connections were concededly identical. It was stipulated that the defendant manufactured and sold such a kit, which was introduced in evidence, within six years of the filing of this suit and subsequent to the issue of both patents. Under these circumstances, there can be no serious question but that plaintiff's patents, if valid, have been infringed. Some attempt was made to show that the defendant's apparatus might also be used for transmitting and hence not comprised within the strict language of claims relating only to receiving equipment. It was conclusively shown, however, that the defendant's apparatus could not be used for transmitting except at very low powers, and that even if so used would serve no useful purpose.

It is necessary to consider, therefore, whether the references cited by the defendant are such as to show either antici-

pation or lack of invention. No references were cited which, in my opinion, showed anticipation. A considerable number of references dealt with transmitting systems, and were in no way connected with receiving problems. Those references which dealt with receiving systems were not concerned with noise reducing with the possible exception of the Landon invention shown in Pending Application, Serial No. 319,234. Since none of these devices were intended to reduce noise interference, they do not anticipate. See Firestone Tire & Rubber Co. v. United States Rubber Co. (C.C.A.) 79 F.(2d) 948; Trico Products Corporation v. Apco-Mossberg Corporation (C.C.A.) 45 F.(2d) 594.

As pointed out below, the Landon system uses a vacuum tube amplifier between the antenna and the shielded lead-in, instead of an impedance matching transformer, and is furthermore primarily a means for supplying a large number of sets from one antenna.

■ Whether the disclosures of the patents in suit amount to patentable invention presents a much more difficult question. After a careful consideration of the evidence, and of the references cited, I have come to the conclusion that the defendant has failed to establish lack of invention sufficiently clearly to overcome the presumption created by the issue of the patent.

The defendant maintains that the patentees here have done nothing more than to apply well established electrical principles to an analogous use, and that this cannot be considered invention. There can be no question that the use of shielded cables to reduce pick up of unwanted disturbances was old. This appears in the specifications of patent No. 1,920,162, and was frankly admitted by the plaintiff's president at the trial. Furthermore, there can be no doubt that various methods for matching the impedance of a transmission line to that of an antenna had been used for years for transmitting purposes. Many such patents were cited, the most striking resemblance being Taylor, U. S. No. 1,608,-047, which shows a concentric line, similar electrically to the plaintiff's shielded cable, matched by means of an impedance matching transformer. That such antennas, if used for receiving, would work in some cases much as does the system here disclosed, seems likely. But I am of opinion that the patentees have done more in the present instance than adopt methods familiar in the transmitting art for receiving purposes. Transmitting antennas employing impedance matching devices are usually designed to operate on a single frequency or narrow band of frequencies. In the present instance the impedance matching transformer must be so designed as to operate with reasonable efficiency over the wide range of frequencies used for broadcasting at the present time. Such a transformer presents problems not met in the design of transmitting systems.

Nor do the defendant's other references tend to support its contention in this respect. Clement, U. S. No. 1,688,036 and Rawsthorne, Br. No. 242,759 both show systems for the transmission of high frequency alternating currents claimed to be suitable for both sending and receiving. Both of these patents show an antenna connected to a low impedance line through a stepdown transformer. In neither case, however, can it be certain whether the transformer was used as an impedance matching device properly speaking. Nor does it appear whether the use of a line having an impedance as low as that used in the present patents was contemplated.

The invention of V. D. Landon, described in Pending Application, Serial No. 319,-234, and in "Radio Broadcast," for March, 1929, and the subject of French patent No. 684,780 issued to Westinghouse Electric & Manufacturing Company is the only reference cited which deals with noise suppression. Landon, however, discloses a system intended for use on apartment houses, the principal purpose of which is to enable a number of people to use one antenna. Landon does not use an impedance matching transformer directly between the aerial and the line. The aerial works into a vacuum tube amplifier, conveniently placed near the end of the antenna proper, the output of which is fed to shielded cables which run to the various receiving sets. The Landon device, therefore, uses an entirely different, more complicated, and less satisfactory method of transferring energy from the antenna to the line. Clearly the present patentees borrowed nothing from Landon by way of analogous use.

Nor do I regard the article by T. L. Eckersley entitled "An investigation of Short Waves" and published in Journal of Institute of Electrical Engineers, August, 1929, as of much value in this connection.

676

In this article Eckersley describes certain experiments with short wave directional effects as bearing upon theories of short wave propagation. As a prelude to a highly technical discussion, he describes a directional receiving system, consisting of two vertical antennas one-half wave apart, the energy from which he brings to a receiver by means of shielded cables of equal length. The antennas are shown matched to these cables by auto-transformers outwardly somewhat similar to the transformers here involved. The article was published, however, only a few months before the original application in No. 1,938,092 was filed. The apparatus shown was not intended for use at broadcast frequencies and did not have to work over a wide range of frequencies. Since the experiments depended upon measuring the difference in phase in the currents set up in the two aerials, it was essential for their success, as is pointed out in the article, that the apparatus be used only on stations whose wave-length was roughly twice the distance between the aerials.

■ The defendant's contention that these patents disclose only an aggregation of old elements must fail. As shown by cases cited by the defendant, in a patentable combination the elements must join together and qualify each other to produce a new result. Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805; Pickering v. McCullough, 104 U.S. 310, 26 L.Ed. 749; Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S.Ct. 652, 53 L.Ed. 1034.

That is plainly the situation here. The shielded cable will not work between an antenna and a receiver without the intervention of an impedance matching unit; impedance matching devices are useless unless they are provided with two electrical circuits to match. Together with a good antenna favorably situated, these elements combine to provide a new result, reception relatively free from noise. The case is easily distinguishable from Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241, where a stove containing more convenient devices, all old, than had ever been assembled before in any one stove, was held to be a mere aggregation and not a patentable combination.

■ The defendant raises the defense of double patenting. There is no merit in this suggestion. It is well settled that there is no double patenting unless the claims of the two patents are identical in substantial effect. Wirebounds Patent Co. v. Saranac Automatic Machine Corporation (C.C.A.) 37 F.(2d) 830; Ruben Condenser Co. v. Copeland Refrigeration Corporation (D. C.) 15 F.Supp. 261, 275.

In the latter case it is said: "The applications for the two patents in suit were copending. The first patent in suit is not prior art to the second. To obviate double patenting, it is only necessary that the claims be not the same, and it is not even necessary that the claims of the second patent embody a patentable advance over the first patent."

■ Clearly the two patents are not identical in substantial effect, since one relates to the system and the other to the structure of the impedance matching device.

■ The claims in suit of both patents are valid and infringed.